RECORD NO. **14-4059(L)**
**CONSOLIDATED W/14-4093 & 14-4094**

# IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

---

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

## JAYLE MENDEZ,
## DANIESKY PAYROL SUAREZ and
## RENEE RODRIGUEZ,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO

---

**CONSOLIDATED OPENING BRIEF OF APPELLANTS
JAYLE MENDEZ, DANIESKY PAYROL SUAREZ,
and RENEE RODRIGUEZ**

---

Kathleen A. Gleason
Brooks, Pierce, McLendon,
Humphrey & Leonard, LLP
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC 27401
(336) 271-2583 Telephone
kgleason@brookspierce.com

*Counsel for Appellant
Jayle Mendez*

Don D. Carter
Don D. Carter,
Attorney at Law, PLLC
Suite 303
313 South Greene Street
Greensboro, NC 27401
(336) 763-2040 Telephone
dcarter@doncarterlaw.com

*Counsel for Appellant
Daniesky Payrol Suarez*

Thomas H. Johnson, Jr.
Gray & Johnson, LLP
The Gray Building
108 N. Elm Street
Greensboro, NC 27401
(336) 370-4500 Telephone
thjohnsonlaw@bellsouth.net

*Counsel for Appellant
Renee Rodriguez*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................iv

JURISDICTIONAL STATEMENT ...........................................................................1

STATEMENT OF ISSUES .......................................................................................1

STATEMENT OF THE CASE...................................................................................3

STATEMENT OF FACTS .........................................................................................4

SUMMARY OF ARGUMENT ..................................................................................7

ARGUMENT ............................................................................................................10

I.     THE DISTRICT COURT ERRED WHEN IT OVERRULED THE
       OBJECTIONS OF MR. MENDEZ, MR. SUAREZ, AND MR.
       RODRIGUEZ TO THEIR RESPECTIVE PRESENTENCE
       REPORTS.........................................................................................................10

       A.     Standard of Review...............................................................................10

       B.     The District Court Erred When It Applied the Enhancement for
              Use of Sophisticated Means to the Guideline Calculation
              Because the Means Were Not Sophisticated, or Alternatively,
              Because That Enhancement is Impermissible Double Counting ......10

              1.     The Government Failed to prove that the Offense
                     Conduct Was Especially Complex or Especially Intricate .......11

              2.     The Government Failed to Prove that the Scheme
                     Occurred in Other Jurisdictions .................................................13

3.    The Specific Offense Conduct Which Accounts for the Enhancement for Use of Sophisticated Means is the Same Conduct Relied Upon for the Enhancement for the Use or Possession of an Access Device or Devise Making Equipment, Which is Impermissible Double Counting ...........13

C.    The District Court Erred to the Extent It Included in Mr. Mendez's Guidelines Calculation the Use of Sophisticated Means Based on the Relocation of the Scheme to Another Jurisdiction .......................................................................14

D.    The District Court Erred When It Found that the Total Loss Amount for Mr. Suarez and Mr. Rodriguez was More than $70,000 but Less than $120,000 and Made an Eight-Level Upward Adjustment to the Offense Levels .....................................16

E.    The District Court Erred When It Found that the Offense Involved More than 50 Victims but less than 250 Victims and Made a Four-Level Upward Adjustment to Offense Levels.............19

F.    The District Court Erred When It Increased the Offense Levels for Mr. Suarez and Mr. Rodriguez by Two Points for Leadership When the Government Failed to Present Credible and Consistent Evidence of Leadership ...........................................20

G.    The District Court Erred When It Denied Mr. Suarez and Mr. Rodriguez a Four-Level Downward Adjustment to the Offense Level for Minor Role in the Offense.................................................23

II.    THE DISTRICT COURT ERRED WHEN IT DID NOT DOWNWARDLY VARY FROM THE CALCULATED GUIDELINE RANGES WHERE THE FICTIONAL LOSS MULTIPLIER OF $500 PER ACCESS DEVICE IS AN ARBITRARY VALUE NOT BASED UPON EMPIRICAL EVIDENCE .................................................................................24

A.    Standard of Review.........................................................24

B.    The Use of the Fictional Loss Multiplier of $500 is Not Based On Empirical Evidence and Results in a Sentence Greater than Necessary to Comply with the Purposes of Sentencing......................25

CONCLUSION ........................................................................................26

CERTIFICATE OF COMPLIANCE ......................................................28

CERTIFICATE OF SERVICE .............................................................29

# TABLE OF AUTHORITIES

## CASES

Page

*United States v. Davis*,
  679 F.3d 177 (4th Cir. 2012) ........................................................................10

*United States v. Estrada*,
  42 F.3d 228 (4th Cir. 1994) ...........................................................................10

*United States v. Gilliam*,
  987 F.2d 1009 (4th Cir. 1993) ........................................................................10

*United States v. Lynn*,
  592 F.3d 572 (4th Cir. 2010) .........................................................................25

*United States v. Reevey*,
  364 F.3d 151 (4th Cir. 2004) .........................................................................13

*United States v. Rohwedder*,
  243 F.3d 423 (8th Cir. 2001) .........................................................................13

*United States v. Schluneger*,
  184 F.3d 1154 (10th Cir. 1999) .....................................................................23

*United States v. Vega-Iturrino*,
  565 F.3d 430 (8th Cir. 2009) .........................................................................15

## STATUTES

18 U.S.C. § 1028A ..............................................................................3, 4, 5
18 U.S.C. § 1028A(c).................................................................................1
18 U.S.C. § 1029(a)(1)............................................................................1, 4
18 U.S.C. § 1029(a)(2)............................................................................1, 4
18 U.S.C. § 1029(a)(3)............................................................................1, 4
18 U.S.C. § 1029(a)(4)..............................................................................4
18 U.S.C. § 1029(b)(2)...........................................................................3, 4, 5
18 U.S.C. § 1029(c)(1)..............................................................................4
18 U.S.C. § 1029(c)(2)..............................................................................4
18 U.S.C. § 3553 .....................................................................................25

18 U.S.C. § 3553(a) ................................................................4, 6, 7, 9, 25, 26
18 U.S.C. § 3742 ..........................................................................................1
18 U.S.C. § 3742(e) ...................................................................................24
28 U.S.C. § 1291 ..........................................................................................1

## SENTENCING GUIDELINES

U.S.S.G. § 2B1.1 ...................................................................................19, 20
U.S.S.G. § 2B1.1 Note 1 ...........................................................................19
U.S.S.G. § 2B1.1, comment n. 3 (F) ....................................................17, 25
U.S.S.G. § 2B1.1, comment n. 3 (F)(i) ...........................................5, 6, 9, 16, 25
U.S.S.G. § 2B1.1(b)(1)(C) ........................................................................25
U.S.S.G. § 2B1.1(b)(1)(E) ...................................................................16, 25
U.S.S.G. § 2B1.1(b)(2) ..............................................................................19
U.S.S.G. § 2B1.1(b)(1)(3) ........................................................................17
U.S.S.G. § 2B1.1(b)(2)(A)(i) ....................................................................20
U.S.S.G. § 2B1.1(b)(10) .............................................................................5
U.S.S.G. § 2B1.1(b)(10)(A) .............................................................13, 14, 15
U.S.S.G. § 2B1.1(b)(10)(C) ..................................................................10, 11
U.S.S.G. § 2B1.1(b)(11)(A) ...................................................................13, 14
U.S.S.G. § 2B1.1(b)(11)(B)(i) ...............................................................13, 14
U.S.S.G. § 3B1.1(c) ....................................................................................5
U.S.S.G. § 3B1.2A ....................................................................................23

## OTHER AUTHORITIES

U.S. Sentencing Comm'n, 65 Fed. Reg. 26892 (May 9, 2000) ................................26

## JURISDICTIONAL STATEMENT

The District Court had original jurisdiction pursuant to 18 U.S.C. §§ 1029(a)(1), (a)(2), and (a)(3), and 18 U.S.C. § 1028A(c). The District Court entered final judgment on January 16, 2014. J.A. 204, 211, 218. Mr. Mendez timely filed his Notice of Appeal on January 17, 2014. J.A. 225. Mr. Suarez timely filed his Notice of Appeal on January 29, 2014. J.A. 227. Mr. Rodriguez timely filed his Notice of Appeal on January 30, 2014. J.A. 229. This Court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.     Whether the District Court erred when calculating the appropriate sentencing Guidelines for Mr. Mendez, Mr. Suarez, and Mr. Rodriguez when it increased the offense level for each by two points for use of sophisticated means where the Government did not carry its burden of proving the use of sophisticated means, and the offense conduct did not include any conduct not already accounted for by the application of a two-level enhancement for the specific offense characteristic of the use or possession or an access device or device making equipment.

2.     Whether the District Court erred when calculating the appropriate sentencing Guidelines for Mr. Mendez when it increased the offense level by two

1

points for use of sophisticated means where Mr. Mendez did not relocate, or participate in relocating, the offense conduct to evade law enforcement.

3.      Whether District Court erred by finding that the total loss amount was more than $70,000 but less than $120,000 and making an eight-level upward adjustment to the offense levels.

4.      Whether the District Court erred by finding that the offense involved more than 50 victims but less than 250 victims and making a four-level upward adjustment to the offense levels.

5.      Whether the District Court erred when calculating the appropriate sentencing guidelines for Mr. Suarez and Mr. Rodriguez when it increased the offense level by two points for leadership where the Government failed to present credible and consistent evidence of leadership when the Government's sole source is contradicted by the Government's physical evidence and by common sense.

6.      Whether the District Court erred when it denied Mr. Suarez and Mr. Rodriguez a four-level downward adjustment to the offense level for minor role in the offense.

7.      Whether the District Court erred when it did not downwardly vary from the calculated guideline ranges for Mr. Mendez, Mr. Suarez, and Mr. Rodriguez where the fictional loss multiplier of $500 per access device is an arbitrary value not based upon empirical evidence.

## STATEMENT OF THE CASE

On June 25, 2013, a grand jury indicted Jayle Mendez, Payrol Daniesky Suarez, Yoandry Darias, and Renee Rodriguez in the United States District Court for the Middle District of North Carolina. J.A. 21. The nine-count indictment charged the Defendants with allegations related to a scheme to commit credit card fraud. *Id.*

On October 3, 2013, Mr. Mendez entered a plea of guilty to Counts One and Two of the indictment, Conspiracy to Possess Counterfeit Access Devices in violation of 18 U.S.C. § 1029(b)(2) and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, respectively. J.A. 40. On October 7, 2013, Mr. Suarez and Mr. Rodriguez each entered a plea of guilty to Count One of the indictment, Conspiracy to Possess Counterfeit Access Devices in violation of 18 U.S.C. § 1029(b)(2). J.A. 54; 61.

At sentencing, the District Court found, over Mr. Suarez's objections, that the two-level increase to the base offense level for the use of sophisticated means applied to him. J.A. 160. The court also found, over Mr. Suarez's and Mr. Rodriguez's objections that the loss amount attributable to them under Count 1, Conspiracy to Possess Counterfeit Access Devices, was $115,475.33. J.A. 159. The court also found, again over Mr. Suarez's and Mr. Rodriguez's objections, that

the two-level increase to the offense level for aggravating role applied in this case. J.A. 160-61.

The District Court found, over Mr. Mendez's objections, J.A. 250, that the two-level increase to the base offense level for use of sophisticated means also applied to him. J.A. 197.

The court found, again over the objections of Mr. Mendez, Mr. Suarez, and Mr. Rodriguez, J.A. 250, 198; 147; 154-55, that sentences within the calculated Guidelines ranges for each individual was no greater than necessary to serve the purposes set out in 18 U.S.C. § 3553(a).

Consequently, Mr. Mendez, Mr. Suarez, and Mr. Rodriguez were sentenced to within-Guidelines sentences of 54 months, 46 months, and 37 months, respectively. J.A. 204; 211; 218.

Mr. Mendez, Mr. Suarez, and Mr. Rodriguez now appeal.

## STATEMENT OF FACTS

On June 25, 2013, Mr. Mendez, Mr. Suarez, and Mr. Rodriguez were charged in a nine-count indictment related to allegations of a scheme to commit credit card fraud, including violations of 18 U.S.C. §§ 1029(a)(1), (2), and (3), 1028A and 2, 1029(a)(3), (c)(1), and 2, and 1029(a)(4), (c)(1), and 2. J.A. 21.

On October 3, 2013, Mr. Mendez entered a plea of guilty to Counts One and Two of the Indictment, charging him with Conspiracy to Possess Counterfeit

4

Access Devices in violation of 18 U.S.C. § 1029(b)(2) and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, respectively.  J.A. 40.

On October 7, 2014, Mr. Suarez and Mr. Rodriguez each entered a plea of guilty to Count One of the Indictment, charging each of them with Conspiracy to Possess Counterfeit Access Devices in violation of 18 U.S.C. § 1029(b)(2).  J.A. 54; 61.

The District Court conducted a sentencing hearing for all three defendants-appellants on January 3, 2014.  J.A. 68.  In calculating a recommended Guidelines range for each defendant-appellant, each Presentence Report ("PSR") found the total loss amount to be $115,475.33, U.S.S.G. § 2B1.1, n. 3(F)(i).  J.A. 238.  In calculating a recommended Guidelines range for each defendant-appellant, each PSR applied a two-level increase to the base offense level for use of sophisticated means, U.S.S.G. § 2B1.1(b)(10).  J.A. 239.    In calculating a recommended Guidelines range for Mr. Suarez and Mr. Rodriguez, the respective PSRs applied a two-level increase to the base offense level for aggravating role, U.S.S.G. § 3B1.1(c).

Mr. Mendez filed objections to his PSR, objecting to (1) the two-level enhancement for use of sophisticated means, and (2) the eight-level increase for a total loss amount in excess of $70,000, but less than $12,000.  J.A. 250.

In support of his objection to the enhancement for use of sophisticated means, Mr. Mendez argued that the conduct for which the enhancement was applied was already accounted for by the two-level enhancement for the possession of device making equipment and the production of unauthorized access devices. *Id*. At the sentencing hearing, in response to the Government's argument that the sophisticated means enhancement should also apply because the scheme took place in multiple jurisdiction, Mr. Mendez objected, contending that Mr. Mendez was a recruited participant in the scheme and did not evidence any intent to evade law enforcement. J.A. 196-97.

In support of his objection to the total loss amount finding, Mr. Mendez argued that $94,500 of the total loss amount of $115,475.33 resulted from the application of the loss multiplier of $500 per access device, U.S.S.G. § 2B1.1, n. (F)(i), and that the fictional loss multiplier violates the parsimony provision of 18 U.S.C. § 3553(a) because it is not based on empirical research. J.A. 250; 198.

The District Court denied all of the objections. It held that Mr. Mendez was subject to an advisory Guidelines range of 30 to 37 months for Count 1 and a mandatory consecutive term of imprisonment of 24 months for Count 2, and imposed a within-Guidelines sentence of 54 months, plus a one-year term of supervised release. J.A. 204. The District Court held that Mr. Suarez was subject to an advisory Guidelines range of 41 to 51 months, and imposed a within-

6

Guidelines sentence of 46 months, plus a three-year term of supervised release. J.A. 211. The District Court held that Mr. Rodriguez was subject to an advisory Guidelines range of 37 to 46 months, and imposed a within-Guidelines sentence of 37 months, plus a two-year term of supervised release. J.A. 218.

Mr. Mendez filed a timely notice of appeal on January 17, 2014. J.A. 225. Mr. Suarez filed a timely notice of appeal on January 29, 2014. J.A. 227. Mr. Rodriguez filed a timely notice of appeal on January 30, 2014. J.A. 229.

## SUMMARY OF ARGUMENT

The advisory Guidelines ranges for each of the defendants-appellants should be adjusted downward to reflect the correct application of the respective offense levels. Additionally, the sentences for each of the defendants-appellants should then be varied downward to reflect a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

Mr. Mendez, Mr. Suarez, and Mr. Rodriguez each received a two-level increase to the base offense level for use of sophisticated means. First, the Government did not prove, by a preponderance of the evidence, that the scheme involved sophisticated means. Second, regardless of whether the Government met its burden of proof on this enhancement, the application of this enhancement resulted in impermissible double counting. The individual PSRs indicate that this two- level increase was based on the defendants-appellants' use of "blank" Green

Dot Visa cards to hold stolen credit card information and their use of software and a card reader to "manufacture" these counterfeit cards. J.A. 250-51. The Secret Service Special Agent testified that this means was substantially less involved than other schemes devised to achieve the same ends. J.A. 98-101. The defendants-appellants also each received a two-level increase to the base offense level for the possession of device-making equipment and the production of unauthorized access devices. J.A. 239. Because the offense conduct of possessing device-making equipment and producing unauthorized access devices is the same conduct that accounts for the enhancement for the use of sophisticated means, the enhancement for the use of sophisticated means constitutes double-counting and punishes the defendants-appellants twice for the same offense conduct. If this Court determines that the Government met its burden to prove that the defendants-appellants used sophisticated means, Mr. Mendez's, Mr. Suarez's, and Mr. Rodriguez's offense levels were improperly increased as a result of this impermissible double counting.

Mr. Mendez further objected to the application of the enhancement for the use of sophisticated means based on the scheme's occurrence in other jurisdictions. J.A. 196-97. Mr. Mendez was a recruited participant in the scheme and followed where led. J.A. 79, 80, 82, 85, 122, 101-02, 144. He did not travel or relocate for the purpose of evading law enforcement – rather, he traveled because he went

where he was told to go. *Id*. Therefore, this enhancement should not apply to him on this basis.

Mr. Suarez and Mr. Rodriguez each objected to the loss amount of $115,475.33, stating that this amount was improperly calculated because it included losses attributable to an unknown number of invalid and/or closed credit card accounts. J.A. 147-48; 151.

Mr. Suarez and Mr. Rodriguez each received a two-level enhancement for leadership role in the offense. J.A. 161.

Mr. Mendez, Mr. Suarez, and Mr. Rodriguez each objected to the loss amount calculation based on the fictional loss multiplier found at U.S.S.G. §2B1.1, comment n.3(F)(i). J.A. 250; 198. Because the amount of the fictional loss multiplier, $500 per access device, is not based on any empirical evidence, it is an arbitrary amount which increases the defendants-appellants' sentences above that which would otherwise result from the actual loss amount caused by their actions. The fictional loss multiplier therefore results in a sentence that is greater than necessary to comply with the purposes of sentencing and violates the parsimony provision of 18 U.S.C. § 3553(a). The only loss amount supported by empirical evidence was the actual loss amount of $26,638.97, J.A. 238, and the sentences for the defendants-appellants should have been varied downward to reflect this supportable loss amount.

# ARGUMENT

## I. THE DISTRICT COURT ERRED WHEN IT OVERRULED THE OBJECTIONS OF MR. MENDEZ, MR. SUAREZ, AND MR. RODRIGUEZ TO THEIR RESPECTIVE PRESENTENCE REPORTS

### A. Standard of Review

The proper interpretation of the Sentencing Guidelines is a legal question reviewed *de novo*. *See United States v. Davis*, 679 F.3d 177, 182 (4th Cir. 2012). The Government has the burden of proving sentencing factors by a preponderance of the evidence, including enhancements to the base offense level and an individual's role in the offense. *See United States v. Estrada*, 42 F.3d 228, 231 (4th Cir. 1994); *United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993).

### B. The District Court Erred When It Applied the Enhancement for Use of Sophisticated Means to the Guideline Calculations Because the Means Were Not Sophisticated, or Alternatively, Because That Enhancement is Impermissible Double Counting

Section 2B1.1(b)(10)(C) of the United States Sentencing Guidelines provides for a two-level increase in the base offense level if "the offense otherwise involved sophisticated means." U.S.S.G. §2B1.1(b)(10)(C). Pursuant to the notes contained in Mr. Mendez's PSR, J.A. 250, this enhancement was intended to apply to the means by which the co-defendants carried out the scheme – that is, to their use of device-making equipment to create counterfeit credit cards. *Id*. First, the Government did not prove by a preponderance of the evidence that the scheme involved the use of sophisticated means. Second, the Government did not prove

beyond a preponderance of the evidence that the scheme occurred in other jurisdictions. Third, the application of this sentencing factor is impermissible double counting because this offense characteristic is already taken into account with the two-level increase in base offense level attributable to "possession of device-making equipment and the production of unauthorized access devices." J.A. 239, 250.

### 1. The Government Failed to Prove that the Offense Conduct Was Especially Complex or Especially Intricate

"For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. §2B1.1(b)(10)(C), Comment n. 9. The Government failed to prove that the means by which the defendant-appellants perpetrated the scheme was "especially complex or especially intricate." The defendants-appellants used software loaded on to a computer, which communicated with a magnetic stripe card reader/writer. J.A. 22. They obtained blank Green Dot Visa gift cards[1] and stolen credit card numbers. *Id.* They used the computer and card reader/writer to encode the stolen numbers onto the Green Dot Visa cards. *Id.* Secret Service Special Agent Donna Baker James testified that the method the defendants-appellants used to perpetrate their scheme was

---

[1] Green Dot Visa cards are prepaid cards sold by retail outlets, which are then "loaded" with funds paid in advance. J.A. 99.

substantially less involved than a scheme which required the manufacturing of counterfeit credit cards, and that it required "less equipment and skills." J.A. 101. Special Agent James also testified that the skills required for the scheme involved here were "some skills of loading software and getting some kind of instruction" for using the software in conjunction with the card reader/writer. J.A. 107. Special Agent James testified that "with technology everything has become easier to do." J.A. 108. Special Agent James pointed out that by using Green Dot Visa cards instead of creating new counterfeit cards, the appellant-defendants employed a less sophisticated means because the scheme did not require the attendant use of counterfeit identification, stating that "on a prepaid card, there is no person's name on the card, so it can be used by anyone." J.A. 101.

The only testimony before the District Court related to the question of whether the scheme was "especially complex or especially intricate" was the testimony of Special Agent James, who illustrated that the scheme involved less sophisticated means that might otherwise be employed. The Government has not proved by a preponderance of the evidence that the scheme involved the use of sophisticated means. The enhancement for the use of sophisticated means should not apply to the defendants-appellants.

### 2. The Government Failed to Prove that the Scheme Occurred in Other Jurisdictions

The sophisticated means enhancement may apply if "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." U.S.S.G. §2B1.1(b)(10)(A). The charges to which the appellants-defendants plead guilty originated in North Carolina. While Special Agent James testified that they found in the hotels rooms WalMart gift cards purchased in South Carolina, the Government did not present any evidence that the South Carolina gift cards were obtained by fraudulent means. J.A. 104-05.

### 3. The Specific Offense Conduct Which Accounts for the Enhancement for Use of Sophisticated Means is the Same Conduct Relied Upon for the Enhancement for the Use or Possession of an Access Device or Device Making Equipment, Which is Impermissible Double Counting

"Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." *United States v. Reevey*, 364 F.3d 151, 158 (4th Cir. 2004) (citing *United States v. Rohwedder*, 243 F.3d 423, 426-27 (8th Cir. 2001)). Under U.S.S.G. §§2B1.1(b)(11)(A) and (B)(i), the specific offense characteristic of possessing or using device-making equipment and/or the production of unauthorized access devices subjects a defendant to a two-level increase in the base offense level. That

increase was applied to each of Mr. Mendez, Mr. Suarez, and Mr. Rodriguez. J.A. 239. The PSRs included an <u>additional</u> two-level increase to the base offense level for using otherwise sophisticated means based on the defendants-appellants' use of a computer and software, along with a magnetic stripe card reader/writer, to re-encode Green Dot Visa cards with stolen credit card numbers. J.A. 239, 250. In other words, the PSRs included an additional two-level increase to the base offense level for "using device-making equipment and the production of unauthorized access devices."

This is the same offense characteristic which subjects the defendants-appellants to the two-level increase under U.S.S.G. §§2B1.1(11)(A) and (B)(i). This conduct has already been accounted for by the application of another Guideline provision. The two-level increase for the use of sophisticated means is therefore impermissible double counting.

**C.     The District Court Erred to the Extent It Included in Mr. Mendez's Guidelines Calculation the Use of Sophisticated Means Based on the Relocation of the Scheme to Another Jurisdiction**

The sophisticated means enhancement may also apply if "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." U.S.S.G. §2B1.1(10)(A). The offense conduct occurred across jurisdictions from Florida to North Carolina. J.A. 22. There is no evidence in the record that Mr. Mendez traveled from Florida to

14

North Carolina for the purpose of evading law enforcement. The evidence is that Mr. Mendez was recruited with the fourth co-defendant, Yoandry Darias, to go along with Mr. Suarez and Mr. Rodriguez to wherever Mr. Suarez and Mr. Rodriguez told Mr. Mendez and Mr. Darias to go, in order to participate in the credit card scheme. J.A. 79, 80, 82, 85, 122, 101-02, 144. Mr. Mendez did not "locate," or originate, the scheme and therefore he could not "relocate" the scheme. *Id*. Mr. Mendez's travel to North Carolina was not for the purpose of relocating the scheme – if anything, it appears that Mr. Mendez's travel was for the purpose of participating with his co-defendants, wherever they might be. *Id*.

Mr. Mendez concedes that the District Court may conclude that his movement can satisfy the requirements of section 2B1.1(b)(10)(A) if there is a showing of a general intent to evade law enforcement. *See*, *e.g.*, *United States v. Vega-Iturrino*, 565 F.3d 430, 433 (8th Cir. 2009) ("We do not find in the guideline a requirement that the relocation be motivated by a 'specific' threat of arrest as opposed to a more general intent to evade law enforcement."). In this case, however, the Government has not proved, by a preponderance of the evidence, that Mr. Mendez traveled with the intent to evade law enforcement. In the absence of any other plausible reason for Mr. Mendez's travels to North Carolina, it may be inferred that he traveled to North Carolina to <u>participate</u> in the credit card scheme but not for the purpose of evasion. Therefore, the enhancement for the use of

15

sophisticated means grounded on the relocation of the scheme to another jurisdiction to evade law enforcement should not apply to Mr. Mendez.

**D.    The District Court Erred When It Found that the Total Loss Amount for Mr. Suarez and Mr. Rodriguez was More than $70,000 but Less than $120,000 and Made an Eight-Level Upward Adjustment to the Offense Levels [2]**

The District Court erred in applying the eight-level upward adjustment pursuant to USSG §2B1.1(b)(1)(E) because it erroneously concluded the loss amount was more than $70,000, but less than $120,000.  J.A. 294.

The District Court arrived at this conclusion based on paragraph 16 of the PSRs: "Pursuant to USSG §2B1.1, comment (n.3(F)(i), 'In a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized access device and shall not be less than $500 per access device.'" J.A. 294.

However, this is only half of the inquiry because this statement is only half of Note 3 and consequently only half of the analysis.  The rest of Note 3 contains a caveat on the $500.00 per device calculation and goes on to state:  "However, if the unauthorized access device is a means of telecommunication access that identifies a specific telecommunications instrument or telecommunications account (including an electronic serial number/mobile identification number (ESN/MIN) pair), and that means was only possessed, and not used, during the commission of

_____

[2] Mr. Mendez did not object to the loss calculation.

the offense loss and not used during the commission of the offense, loss shall be not less than $100 per unused means." U.S.S.G. §2B1.1 Note 3 (F). Applying this $100.00 per card calculation and interpretation of the Note 3(F)(i), titled "Stolen or Counterfeit Credit and Access Devices: Purloined Numbers and Codes," to the 189 devices that were not used results in a loss amount of $18,900.00 instead of $94,500. The only evidence before the District Court shows that those 189 devices were not used: "The account numbers located during the investigation of the instant offense were found to belong to 123 individual victim account holders and were issued by 31 different banks/credit unions. "The individual account holders did not suffer actual loss." J.A. 294.

The actual loss amount for the banks and financial institutions is $26,638.91. J.A. 293. Mr. Suarez and Mr. Rodriquez argue the correct calculation of loss to the victims was not $115,475.33, but a much lower amount of $45,538.91 and should have resulted in a upward adjustment of six levels for the section 2B1.1(b)(1)(3) Specific Offense Characteristic of being more than $30,000, instead of the eight level upward adjustment under (E) for being more than $70,000. It still must be the burden of the government to prove whether or not these are valid numbers; and when the lead agent can say to the Court that "I don't know," J.A. 111-12, that's important. What we do know is that the majority of the inquiries that Special

Agent James made to all the banks came back that there was not fraudulent activity. J.A. 113.

Mr. Suarez and Mr. Rodriguez argue and contend that the Government did not advise the District Court how many of those numbers on the computer were valid, how many were closed accounts, and how many could be used for any illegal activity. J.A. 111-113. Mr. Suarez and Mr. Rodriguez believe that this is very important in considering the loss calculation for the Court—even though the statute allows that $115,000-dollar figure, for $500 to be put on every number or card, it's greater than necessary to be sufficient, especially when the Government could not identify whether the credit card numbers were valid or could be used for any illegal purpose.

Mr. Suarez and Mr. Rodriguez agree that a two point enhancement would be more appropriate because some cards were used and based on the PSR, as well as the evidence, the actual loss was approximately $27,000. To arbitrarily put $500 to every credit card number that was on that computer where the Government cannot advise the Court how many of those numbers were valid, had already been closed, or could not have been used is not fair to Mr. Suarez and Mr. Rodriguez and is greater than necessary to be sufficient in this case.

Not only did the Government not know which cards were invalid, but also, the Special Agent James testified that the majority of the returned inquiries

concerning these credit card numbers on the computer, were returned with no

fraudulent activity on them:

> Counsel:  And my question is, though, would it be the majority of the inquiries that you got back out of those numbers that, the response was is that there was no fraudulent activity recorded on the majority of those numbers that you say were on the computer?

> S.A. James: Yes, I think that could be a correct statement.

J.A. 113.

### E.    The District Court Erred When It Found that the Offense Involved More than 50 Victims but less than 250 Victims and Made a Four-Level Upward Adjustment to Offense Levels. [3]

Mr. Suarez and Mr. Rodriguez argue the District Court erroneously

determined more than 50 victims were involved.  Its conclusion and the PSR

conclusion were too broad.  Under §2B1.1 Note 1, "Victim" means (A) any person

who sustained any part of the actual loss determined under (b)(2); or (b) any

individual who sustained bodily injury as a result of the offense.  "Person" includes

individuals, corporations, companies, associations, firms, partnerships, societies,

and joint stock companies.

The Victim Impact Statement in paragraph 17 of the PSR states at the third

line, "The individual account holders did not suffer actual loss."  Therefore, the

individuals who did NOT suffer actual loss are not victims under section 2B1.1.

However, the ten banks that suffered actual losses are victims under section

---

[3] Mr. Mendez did not object to the adjustment for number of victims.

2B1.1(b)(2)(A)(i) [involved 10 or more victims], and the two-level enhancement for 10 or more victims should apply instead of the four-level enhancement for 50 or more victims.  A victim is limited or defined under section 2B1.1 definition as an individual or entity that must have suffered as actual loss the pecuniary harm that resulted from the offense, which is not every card holder.

### F.    The District Court Erred When It Increased the Offense Levels for Mr. Suarez and Mr. Rodriguez by Two Points for Leadership When the Government Failed to Present Credible and Consistent Evidence of Leadership

With the exception of Mr. Darias stating that Mr. Suarez and Mr. Rodriguez were leaders, there was no corroborating evidence that Mr. Suarez and Mr. Rodriguez were leaders.

The evidence in the case is clear that the money in this scheme was shared equally amongst the four individuals involved, including Mr. Darias.    The Government asked Mr. Darias, "[W]hat were you paid for your part in the scheme?"  Mr. Darias replied that "they used to take all the money out that they used to put together to buy the numbers and all that stuff.  So they take all the money out, and then whatever money we got left, we used to split, all of us." J.A. 123.

The majority of the evidence in this case shows that Mr. Darias controlled the cards used and the computer that housed the credit card numbers belonged to Mr. Darias. When law enforcement arrested all four individuals, they found nearly all the cards in Mr. Darias' vehicle and wallets (Sport Trac truck). J.A. 84. Also, the computer that housed the credit card numbers only had Mr. Darias' identifying characteristics on it. J.A. 109-110. When Special Agent James was asked whether there was anything showing that the computer belonged to Mr. Suarez, she said, "No." J.A. 109.

Mr. Darias contradicted his testimony with earlier statements he provided to law enforcement. During testimony, when Mr. Suarez' counsel asked Mr. Darias did he talk to law enforcement about getting paid $1,000.00 a day Mr. Darias stated, "I didn't tell them nothing about money or nothing. I didn't tell them how much I was making or nothing." J.A. 133. This was in contradiction to what he told law enforcement when first arrested, when he stated "he had been hired by Rene Rodriguez … to make purchases with the green dot cards. Darias stated he estimated he was making approximately $1,000.00 a day." J.A. 177. Mr. Darias also testified he was hired by Mr. Suarez, J.A. 120-121, but told law enforcement officers it was Mr. Rodriguez who hired him. J.A. 177. Mr. Darias' testimony is contradictory to Mr. Mendez' statement. J.A. 177,179. Mr. Darias contradicted his statement about the money again when he stated that Mr. Suarez paid him

$19,000.00 on the second trip.  J.A. 127.  Mr. Darias never told law enforcement about such a payment, despite at least three interviews.  J.A. 176-190.

Mr. Darias' purpose in testifying was to receive a lesser sentence as he stated when asked, "What do you expect for testifying?"  J.A. 136.  He replied, "Lower my sentence."  *Id*.  Mr. Suarez and Mr. Rodriguez contend that Mr. Darias would have said anything to reach this end and that he was not credible.  They also contend that they are no more leaders than anyone else, especially since the evidence is clear that Mr. Darias is the one that had nearly all the cards used in this scheme in his possession, that the computer that was used had Mr. Darias' characteristics on it, and that he provided inconsistent testimony that contradicted his three previous statements to law enforcement.

Again, what leaders allow, for lack of a better term, their underlings to have all of the cards, all of the equipment?  Mr. Darias' assertions are completely uncorroborated and contrary to the evidence in this case.

Furthermore, Mr. Darias is the only one out of four saying that Mr. Suarez and Mr. Rodriquez were leaders.  Mr. Mendez' statement in Defense Exhibit 1 does not corroborate or support those statements and even contradicts them when Mr. Mendez admits paying for the rooms.  All that the evidence shows is that Mr. Rodriguez and Mr. Suarez were no more leaders than any of the others and their roles were those of lookouts.

22

Mr. Suarez and Mr. Rodriguez contend that Mr. Darias would say whatever he needed to say to get a lesser sentence and that the two point enhancement for leadership is not supported by the evidence and should not be allowed.

### G. The District Court Erred When It Denied Mr. Suarez and Mr. Rodriguez a Four-Level Downward Adjustment to the Offense Level for Minor Role in the Offense

Mr. Suarez and Mr. Rodriguez further object to the PSR in that no consideration is given to a four-level downward adjustment for Mr. Suarez' and Mr. Rodriguez' minor role in the offense as a lookout as supported by all the evidence except for Mr. Darias' statement.   The statute provides (a) If the defendant was minimal participant in any criminal activity, decrease by 4 levels; (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels. U.S.S.G. §3B1.2A.   A more than minimal planning increase is not inconsistent with a minimal participant reduction.  *United States v. Schluneger*, 184 F. 3d 1154 (10th Cir. 1999).

There were four people involved in the instant offense.  The evidence provided to the defense from the Government indicates that Mr. Yoandry Darias and Mr. Jayle Mendez are the individuals that made purchases with the access devices, that the device making equipment indicates that Mr. Darias was the owner of the computer that had the credit card numbers on it, and that nearly all the other

access devices (cards) were taken from the vehicle occupied by Mr. Darias and Mr. Mendez.  With the exception of Mr. Darias' statement to the contrary, there is no corroborating evidence that these items can be attributed to anyone but Mr. Darias. Mr. Suarez and Mr. Rodriguez argue that Mr. Darias was not recruited to participate in these activities and avers that his role was that of a lookout. Mr. Suarez and Mr. Rodriguez contend that there is insufficient evidence to find that they should receive the two-level enhancement for leadership.

The mitigating role argument was supported by Detective McNeal's testimony when he testified that Mr. Suarez and Mr. Rodriguez sat in the car and did no more than watching out.   It was Special Agent James who said, "okay, normally, that's what happens," but even she could not say if that was specifically what happened in this instance.

## II.   THE DISTRICT COURT ERRED WHEN IT DID NOT DOWNWARDLY VARY FROM THE CALCULATED GUIDELINE RANGES WHERE THE FICTIONAL LOSS MULTIPLIER OF $500 PER ACCESS DEVICE IS AN ARBITRARY VALUE NOT BASED UPON EMPIRICAL EVIDENCE

### A.    Standard of Review

When making its review, the Court of Appeals "shall accept the findings of fact of the district court unless they are clearly erroneous and … shall give due deference to the district court's application of the guidelines to the facts."   18 U.S.C. § 3742(e).  The Court of Appeals applies the abuse of discretion standard of

review where the defendant "draw[s] arguments from § 3553 for a sentence different than the one ultimately imposed." *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010).

**B.    The Use of the Fictional Loss Multiplier of $500 is Not Based On Empirical Evidence and Results in a Sentence Greater than Necessary to Comply with the Purposes of Sentencing**

The loss amount attributed to the defendants-appellants is $115,475.33.  J.A. 238.  Most of that amount is calculated using the $500 threshold amount found at U.S.S.G. §2B1.1, comment n.3(F).  *Id*.  The actual loss amount is $26,638.97.  *Id*.

A loss amount of more than $70,000 but less than $120,000 increases the base offense level by 8.  U.S.S.G. §2B1.1(b)(1)(E).  This is the increase applied to the defendants-appellants' base offense level.  J.A. 239.   On the other hand, a loss amount of more than $10,000 but less than $30,000 increases the base offense level by only 4.  U.S.S.G. §2B1.1(b)(1)(C).   The use of the fictional loss multiplier found at Comment note 3(F)(i) results in an increase to the base offense level of four levels higher than the application of the actual loss amount.

Mr. Mendez, Mr. Suarez, and Mr. Rodriguez requested a downward variance from the Guideline range calculated using the fictional loss multiplier of $500 per access device because the use of the fictional multiplier resulted in a sentence that is greater than necessary to comply with the purposes of sentencing set out in 18 U.S.C. § 3553(a).   In 2000, the U.S. Sentencing Commission increased the

minimum loss amount from $100 to $500. It did so without providing empirical support showing that this drastic increase – or a change to any other specific amount – was appropriate. Instead, the Commission made a blanket statement that "the Commission's research and data supported increasing the minimum loss amount, previously provided only in §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft), from $100 to $500 per access device." A Notice by the U.S. Sentencing Comm'n, 65 Fed. Reg. 26892 (May 9, 2000). The Commission did not identify the "research and data" supporting this five-fold increase.

The parsimony provision of 18 U.S.C. § 3553(a) provides that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set out in section 3553. The change to the Guidelines that increases by four levels the offense level attributable to Mr. Mendez, Mr. Suarez, and Mr. Rodriguez is greater than necessary to achieve the purposes of punishment found in section 3553(a).

## **CONCLUSION**

Mr. Mendez requests that the Court vacate his sentence and remand his case to the District Court for resentencing without the enhancement for the use of sophisticated means, and for a downward variance to reflect the arbitrary nature of the fictional loss multiplier.

26

Mr. Suarez requests that the Court vacate his sentence and remand his case to the District Court for resentencing without the enhancement for the use of sophisticated means, with a newly calculated loss amount excluding closed or invalid credit card accounts, without the enhancement for aggravating role, with a downward adjustment for mitigating role, recalculating the appropriate Guidelines range, and for a downward variance to reflect the arbitrary nature of the fictional loss multiplier.  Mr. Rodriguez requests that the Court vacate his sentence and remand his case to the District Court for resentencing without the enhancement for the use of sophisticated means, with a newly calculated loss amount excluding closed or invalid credit card accounts, without the enhancement for aggravating role, with a downward adjustment for mitigating role, recalculating the appropriate Guidelines range, and for a downward variance to reflect the arbitrary nature of the fictional loss multiplier.

Respectfully submitted this, the 14th day of May, 2014.

| /s Kathleen A. Gleason | /s Don D. Carter | /s Thomas H. Johnson, Jr. |
|---|---|---|
| Kathleen A. Gleason | Don D. Carter | Thomas H. Johnson, Jr. |
| Brooks, Pierce, McLendon, | Don D. Carter, | Gray & Johnson, LLP |
| Humphrey & Leonard, LLP | Attorney at Law, PLLC | The Gray Building |
| 2000 Renaissance Plaza | Suite 303 | 108 N. Elm Street |
| 230 N. Elm Street | 313 South Greene Street | Greensboro, NC 27402 |
| Greensboro, NC 27401 | Greensboro, NC  27401 | (336) 370-4500 Telephone |
| (336) 271-2583 Telephone | (336) 763-2040 Telephone | thjohnsonlaw@bellsouth.net |
| kgleason@brookspierce.com | dcarter@doncarterlaw.com | |

*Counsel for Appellant*
*Jayle Mendez*

*Counsel for Appellant*
*Daniesky Payrol Suarez*

*Counsel for Appellant*
*Renee Rodriguez*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.     This brief has been prepared with Microsoft Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2.     Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains 6,154 words.

3.     I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

This the 14th day of May, 2014.


Respectfully submitted,


/s/ Kathleen A. Gleason
Kathleen A. Gleason

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing Brief with the Clerk of Court using the CM/ECF system.

I further certify that one copy of the foregoing Brief was served on counsel for Plaintiff-Appellee via CM/ECF notification, addressed as follows:

> Frank J. Chut, Jr.
> Assistant United States Attorney
> United States Attorney's Office
> Middle District of North Carolina
> 101 S. Edgeworth St.
> Greensboro, North Carolina  27401
> frank.chut@usdoj.gov

I further certify that the required copies of the foregoing Brief for filing were placed in the hands of Lantagne Legal Printing for delivery to the Court by May 14, 2014.

This the 14th day of May, 2014.

Respectfully submitted,


/s/ Kathleen A. Gleason
Kathleen A. Gleason

29